**ZENO B. BAUCUS**
**BRYAN T. DAKE**
**Assistant U.S. Attorneys**
**U.S. Attorney's Office**
**2601 Second Avenue North**
**Suite 3200**
**Billings, Montana 59101**
**Phone: (406) 657-6101**
**FAX: (406) 657-6989**
**Email:  zeno.baucus@usdoj.gov**
**          bryan.dake@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 19-95-BLG-SPW** |
| **Plaintiff,** | |
| **vs.** | **SENTENCING MEMORANDUM** |
| **DONALD RAYMOND FOOTE, JR.,** | |
| **Defendant.** | |

## INTRODUCTION

Donald Foote, an individual who had previously violated an order of

protection, harassed separate victims over a period of over one year in 2017 and

2018 before being discovered, again in violation of a protective order, near the

residence of one of his victims.  Foote utilized multiple forms of harassment and

now stands before this Court for sentencing after having demonstrated that he is a danger to society and cannot be deterred.    A sentence of imprisonment is warranted based on the seriousness of the offense and the need to protect the public.

## BRIEF SUMMARY AND OVERVIEW

Foote entered a plea of guilty to Interstate Violation of a Protective Order, in violation of 18 U.S.C. § 2265(a)(1).  PSR ¶¶ 1; 4.  The Presentence Investigation Report (PSR) has established a criminal history score of 4, which places Foote in a criminal history category of III.  PSR ¶ 87.  The PSR has a calculated total offense level of 19, with a guideline range of imprisonment of 37 to 46 months.  *Id*.

The United States does not have any objections to the PSR while Foote has several.  This memorandum will address those objections that potentially impact the recommended guideline range after discussing the relevant conduct below.[1]

## SENTENCING WITNESSES

The government will likely call SA Kiffa Shirley of the FBI at the sentencing hearing to address Foote's factual objections to the PSR.

---

1 Most of Foote's objections to the PSR are factual and, as such, do not warrant a response here but will likely be addressed via witness testimony from SA Shirley at sentencing.  For scheduling purposes, the sentencing hearing has to the potential to be lengthy.

## OFFENSE CONDUCT

In August 2017, Jane Doe 1 was going through a difficult divorce and was approached by Foote and introduced by a mutual acquaintance. PSR ¶ 8. It was suggested that Jane Doe 1 live on the Foote's property in Wyoming while she finalized her divorce and Jane Doe 1 agreed. *Id*. In November of that year, Jane Doe 1 and her daughter moved from Wyoming to Billings and Foote maintained contact with both of them. PSR ¶ 9. The nature and quantity of the contacts from Foote increased and he began contacting friends and family of Jane Doe 1 as well. *Id*.

While the relationship with Foote continued to deteriorate, Jane Doe 1 opened businesses in Billings. In April 2018 Foote approached Jane Doe 1 at her business in Billings and indicated that he wished to speak with her. PSR ¶ 10. During that conversation Foote became irate, made profane statements to Jane Doe 1, and grabbed and broke Jane Doe 1's cellphone. He then left. Subsequently, in July 2018 when Jane Doe 1 traveled to Wyoming to collect some personal belongings from Foote's property, he appeared and began yelling and throwing various items. *Id*. Foote became aggressive, including grabbing Jane Doe 1 and breaking her cellphone. *Id*.

As a result of this and other conduct by Foote, Jane Doe 1 secured a Temporary Order of Protection from Foote in August 2018.  PSR ¶ 11.  In addition to Jane Doe 1, the order precluded Foote from harassing and coming withing 1500 feet of Jane Doe 1's children.   A permanent order was issued in October 2018 and served on Foote.

Critically, law enforcement uncovered a vast and sophisticated scheme conducted by Foote to harass Jane Doe 1 and her family and friends.  Utilizing multiple aliases designed to conceal his tracks, Foote made over 1500 calls to Jane Doe 1 in the Fall of 2018.  PSR ¶ 12.  Moreover, he employed a fictitious personality of "Morris" who corresponded with Jane Doe 1 and others about, among other things, Jane Doe 1's love life and how she should be in a relationship with Foote.  *Id*.  Among some of the messages that "Morris" disseminated was a December 2018 message to Jane Doe 1 that included a picture of her father's gravestone and another instance in which "Morris" sent Jane Doe 1 a picture of one of her children.  PSR ¶ 15.

The harassment by Foote continued unbated.  "Morris" contacted Jane Doe 1's friends and family and often used vulgar language in inquiring about Jane Doe's sexual relations.  PSR ¶ 18.  An obscene voicemail was left for Jane Doe 1's mother, in which a disguised voice made sexually explicit statements about Jane Doe 1.  PSR ¶ 16.  Finally, Foote inquired with at least one of Jane Doe 1's friends

about the type of engagement ring that Jane Doe 1 would prefer even though Jane Doe 1 made it abundantly clear that she did not want a relationship with the him. PSR ¶ 18. This all took an extreme emotional toll on Jane Doe 1 and her family, which culminated when Foote's vehicle was spotted outside her residence in December 2018. PSR ¶ 17. Law enforcement arrived on the scene and found Foote nearby, who claimed that he had traveled from Cody to Billings to purchase materials for his construction business and did not know where Jane Doe 1 resided. *Id*. A subsequent search and examination of electronic media discovered inside Foote's vehicle found, among other items of significance, multiple photographs of Jane Doe and her children, evidence connecting Foote to the "Morris" Facebook account, and internet searches for Jane Doe's residence in Montana. PSR ¶ 20.

## OBJECTIONS

As noted above, the United States does not have objections to the PSR while Foote has several. The only objection that impacts the guidelines, however, is Foote's objection to the 4-level enhancement pursuant to USSG §2A6.2(b)(1). *See* Addendum to PSR. The United States contends that full enhancement should apply, and that objection overruled.

§2A6.2(b)(1) provides for a 4-level increase if at least two listed aggravating factors are present with respect to the instant offense. One of those factors, (A) the

violation of a protective order, was present with respect to Foote's conviction and he does not dispute it here. The other alleged aggravating factor, (E), a pattern of activity involving stalking, threatening, harassing, or assault the same victim, forms the basis of Foote's objection. It is evident, however, that Foote was engaged in such a pattern and the full 4-level enhancement should apply.

As noted in the Addendum to the PSR, in determining whether this factor applies "the court shall consider the, under the totality of the circumstances, any conduct that occurred prior to or during the offense…" (*quoting* App. Note 3). Moreover, such a pattern "means any combination of two or more separate instances pf stalking, threatening, harassing, or assaulting the same victim, whether or not such conduct resulted in a conviction." App. Note 1. Here, Foote was charged with Stalking, in violation of 18 U.S.C. § 2261A(2)(B). PSR ¶ 1. The conduct, which as alleged was directed at Jane Does 1 and 2, occurred in or before July 2018 until his arrest in December 2018 when he showed up in the vicinity of Jane Doe 1's residence in Laurel, Montana. Doc. 1; PSR ¶ 17. Even a cursory review of the relevant conduct of Foote's offense of conviction demonstrates he engaged in a pattern. Between harassing Jane Does 1 and 2 through fictious social media accounts over a period of months, PSR ¶¶ 12-15, sending vulgar messages to Jane Doe's family and friends, delusionally contacting Jane Doe 1's friends about engagement rings for Jane Doe 1, and showing up unannounced in and

around the residence of Jane Doe 1, Foote clearly embarked on a campaign to harass and stalk his victim.  The enhancement should apply.

## SENTENCING ARGUMENT

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;

- promote respect for the law;

- provide just punishment for the offense;

- afford adequate deterrence to criminal conduct;

- protect the public from further crimes of the defendant; and,

- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) sets forwards additional considerations for the Court when imposing an appropriate sentence.  "[T]he nature and circumstances of the offense and the history and characteristics of the defendant" and the "kinds of sentences available" should be considered. 18 U.S.C. § 3553(a)(1),(3).  The Court should similarly consider the sentencing guidelines and policy statements, as well as "the

need to avoid unwarranted sentencing disparities." 18 U.S.C. §3553(a)(4),(5),(6).

Finally, the Court should consider "the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a)(7).

The Violence Against Women Act (VAWA) was enacted as Title IV of the Violent Crimes Control Act of 1994. The purpose of VAWA was to provide women nationwide greater protection and recourse against violence and to impose greater accountability on abusers. *See* P. Paziotopouls, Violence Against Women Act: Federal Relief for State Prosecutors, 30-Jun Prosecutor 20 (1996). Among other things, VAWA established Section 2262, the offense of which Foote is convicted and being sentenced. A review of the seriousness of the offense, along with his history and characteristics, leaves little doubt that a sufficient sentence is necessary.

This is not the first instance that Foote has been convicted of a crime involving similar conduct. That alone should give the Court considerable pause when considering an appropriate sentence. In 2013 Foote was charged with a felony count of Stalking, and he was ultimately convicted of Violation of Temporary Protection Order, a misdemeanor. PSR ¶ 41. The offense involved the Foote's interactions with his ex-wife and conduct that is eerily similar to what he did just five years later. Foote admitted to violating the order of protection by

driving by her residence but denied sending aggressive letters to her. *Id.*[2] He received a relative slap on the wrist for this offense but past is prologue and just five years later Foote was inflicting even more severe and wide-reaching conduct with respect to his latest victims. Moreover, it is notable that based on his broad factual objections to the PSR, this appears to be the same common sense-defying argument that Foote advanced with respect to the instant case: while he is guilty of violating an order of protection someone else must have contacted the victim multiple times, using aggressive and vulgar language, during the same period that he ran afoul of the protection order, but it was not him. In short, Foote asks this Court to believe that he was incorrectly charged with Stalking twice.

Foote met Jane Doe 1 in August 2017 and, after their relationship fell apart, he systematically harassed Jane Doe 1 and her family. He bombarded Jane Doe 1 with unsolicited texts and phone calls. He created fictitious social media platforms for the sole purpose of creating a false persona that reached out to Jane Doe 1 and her friends and family for the benefit of Foote. He left vulgar messages on Jane Doe 1's voicemail and consistently referred to Jane Doe 1's alleged sexual relations with other individuals. Foote stalked Jane Doe 1 and her family, including sending her pictures of her and her children that were surreptitiously

---

2 It is anticipated that SA Shirley may also testify at sentencing as to additional facts surrounding Foote's previous allegations of stalking. This will likely relate to more than one victim.

taken while they were in public.   He showed up at Jane Doe 1's residence on more than one occasion.   And finally, Foote had episodes of violence of physical aggression.

This conduct by Foote  was devastating and had the emotional impact of a sledgehammer on Jane Doe 1 and her family.   Jane Doe 1 referred to living in fear for the safety of her and her family.   PSR ¶ 23.   One of her children has had to deal with increased medication because of the stress caused by Foote.   *Id*.   One of her other children, an adult, can no longer sleep by herself because of the anxiety and fear that now inflicts her because of Foote.   *Id*.   And while the United States is not seeking an upward departure under § 5K2.3 for causing extreme psychological injury to a victim, it is noteworthy that such a consideration does exist within the Guidelines.[3]  The pain that Foote's victims experienced as a direct result of his actions should not be discounted.

There is little doubt that when one considers the information reflected in the PSR it is apparent that Foote remains a threat to public safety.   His inability to admit basic factual allegations contained in the PSR only underscore his detachment from reality and, as such, an incapacity to appreciate the wrongfulness of his actions and necessity to not engage in such conduct again.   A sentence

---

3 With regard to the crime of stalking, Guidelines § 2A6.2 instructs that "an upward departure may be warranted if the defendant stalked the victim on many occasions over a prolonged period of time." Guidelines § 2A6.2, Application Note

within the currently calculated guideline range would reflect sentences for this type of conduct.   *See United States v. Lee*, 790 F.3d 12, 13-15, 19 (1st Cir. 2015) (upholding 100-month prison sentence for defendant who sent his estranged wife 300 emails, some including threats, in addition to other severe and threatening conduct); *United States v. Ull*, 370 F. App'x 225, 225-27 (2d Cir. 2010) (summary order) (upholding 18-month prison sentence for defendant who sent victim 1,400 messages between 1983 and 2007).   Had Foote been convicted of Count I of the Indictment, he would have faced a mandatory minimum sentence.   His conduct here, coupled with his history and characteristics, warrant a sentence of 37 months.

DATED this 7th day of December, 2020.

LEIF JOHNSON
Acting United States Attorney


*/s/ Zeno B. Baucus*
ZENO B. BAUCUS
Assistant U.S. Attorney

*/s/ Bryan T. Dake*
BRYAN T. DAKE
Assistant U.S. Attorney